# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:20-cv-00058-MR

| | |
|---|---|
| **BENSON MOORE,** | ) |
| Plaintiff, | ) |
| vs. | ) |
| **KENNETH LASSITER, et al.,** | ) **ORDER** |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of the Complaint [Doc. 2]. Plaintiff is proceeding *in forma pauperis*. [See Doc. 16].

## I. BACKGROUND

*Pro se* incarcerated Plaintiff filed this civil rights action in the United States District Court for the Middle District of North Carolina pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*[1] The Complaint named at least 37 state prison officials or personnel as Defendants regarding allegations that they provided inadequate medical

---

[1] The Complaint also purports to rely on 18 U.S.C. § 242, "NC Statute 735.40.7(g) & 90.22.21" and North Carolina Department of Public Safety policies. [Doc. 2 at 17]. However, those claims have been dismissed. [Doc. 12 at 3].

care at several North Carolina prisons, including the Mountain View Correctional Institution (Mountain View CI). The Middle District dismissed all claims and Defendants on initial review except for those connected to incidents that allegedly occurred at Mountain View CI. The Middle District then transferred the action to this Court for initial review on the remaining claims and for ruling on the Plaintiff's Motion to Amend/Update the Complaint. [See Docs. 11, 12].

Upon transfer of this matter, this Court denied the Plaintiff's Motion to Amend/Update on the grounds that the Plaintiff was attempting to amend the Complaint in a piecemeal fashion.[2] [Doc. 15]. This denial was without prejudice for the Plaintiff to file a superseding amended complaint within 30 days, which he failed to do. [Id.]. Thus, the Court will proceed to conduct an initial review of those claims asserted in the Complaint relating to the adequacy of the medical care that the Plaintiff received at Mountain View CI.[3]

---

[2] This case was assigned to Judge Frank D. Whitney at that time.

[3] While the Complaint refers to a number of "exhibits," the documents that the Plaintiff has attached to the Complaint are not labeled in accordance with the exhibits mentioned in the Complaint, nor do the documents appear to correspond to the exhibits described in the Complaint. [See Doc. 8 at 8 (Order and Recommendation of United States Magistrate Judge noting that the Complaint refers to an exhibit that is not attached to the Complaint)].

The Defendants presently before the Court are: Kenneth Lassiter, the director of prisons for the North Carolina Department of Public Safety (NCDPS); Tierra Catlett, the NCDPS assistant deputy director of health services; Trisha Jordan, the NCDPS "Assistant of Health Services" [Doc. 2 at 5]; and the following Mountain View CI employees: Superintendent Mike Slagle ("Superintendent Slagle"); Dexter Gibbs, assistant superintendent of programs ("Assistant Superintendent Gibbs"); Kella Phillips, a unit manager ("Unit Manager Phillips"); Donald Grindstaff, a correctional captain ("Captain Grindstaff"); Robert Mask, a case manager ("Case Manager Mask"); FNU Shepard, a warehouse sergeant ("Sergeant Shepard"); Joshua McKinney, a clothes house sergeant ("Sergeant McKinney"); Norma Melton, a nurse supervisor ("Nurse Melton"); FNU Slater, a psychiatrist ("Dr. Slater"); Jeffrey Patane, a physician assistant ("PA Patane"); Brandon Barrier, a nurse ("Nurse Barrier"); and J. Campbell, a nurse ("Nurse Campbell").[4]

---

[4] The Plaintiff's Complaint is 75 pages long and contains over 200 numbered paragraphs of allegations. Only the allegations that pertain to the 15 active Defendants are included in this Order except insofar as additional allegations provide clarity or context. To the extent that the Complaint refers to individuals who are not named as Defendants, these allegations cannot proceed at this time. See Fed. R. Civ. P. 10(a) (requiring that the title of the complaint name all parties); see, e.g., Londeree v. Crutchfield Corp., 68 F. Supp.2d 718 (W.D. Va. 1999). Further, allegations that are extraneous or unclear have been omitted. For instance, the Plaintiff alleges that he "received new restrictions" in a grievance response on March 9, 2018; however, the Court is unable to determine the meaning of this vague allegation or how it relates to a claim against any Defendant. [Doc. 2 at 40].

The Plaintiff alleges that he suffered a football injury in 1995 that required surgery to place a metal rod in his femur. [Doc. 2 at 18]. According to the Plaintiff, his symptoms included "severe pains, locking-up of the hip joint (after periods of sitting or [lying] on metal bed/metal table/stool), popping/stiffness and weakness (giving-out) of the hip joint, [and] throbbing, swelling and numbness to the upper thigh area." [Id. at 18-19]. Upon his incarceration in 2005, the Plaintiff began receiving x-rays, over-the-counter medication, and accommodations for severe pain that was assumed to be associated with his prior surgery. Specifically, the Plaintiff alleges that a NCDPS doctor approved various medical accommodations for him, including the use of an electrical TENS unit, a lidocaine patch, and an air mattress. [Id. at 35].

The Plaintiff alleges that he was transferred to Mountain View CI on December 1, 2017. [Doc. 2 at 36]. At that time, the Plaintiff alleges, Nurse Melton and PA Patane evaluated him and informed him that his pain was psychological due to his lengthy prison sentence, and that his medical accommodations would be discontinued. [Id.].

Over the next two years, the Plaintiff made repeated requests for his medical accommodations to be reinstated, but such requests were refused. The Plaintiff alleges that he submitted multiple sick calls and, while he did

4

receive some treatment, his complaints of pain were often dismissed. [See Doc. 2 at 41 (alleging that Nurse Melton stated that Plaintiff was "okay because he wasn't dying"); at 46 (alleging that Campbell refused to assess him, stating that "Plaintiff's pains won't kill him and Plaintiff isn't going to die")]. The Plaintiff wrote letters to Director Lassiter and Assistant Deputy Director Catlett regarding his lack of treatment, but received no response. [Id. at 42, 45]. The Plaintiff also filed a number of grievances, none of which were successful. [Id. at 42, 43]. The Plaintiff's family and fiancée communicated multiple times with Mountain View officials about the Plaintiff's medical needs, to no avail. [Id. at 43, 44, 46-47, 48]. At one point, the Plaintiff's mother spoke to Superintendent Slagle about the denial of medical accommodations for her son. Slagle told her that Mountain View "doesn't allow the accommodations Mr. Moore was prescribed." [Id. at 43]. The Plaintiff also made multiple requests for a transfer to a different prison facility, all of which were denied. [Id.].

The Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, and any additional relief the Court deems to be appropriate. [Id. at 67].

## II. STANDARD OF REVIEW

Because the Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, the Court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. ADA and Rehabilitation Act Claims

The Plaintiff purports to assert claims based on a disability pursuant to the ADA and the Rehabilitation Act. To state a claim under the ADA and the Rehabilitation Act, a plaintiff must show that: (1) he has a disability; (2) he was otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was denied the benefits of such service, program, or activity, or was otherwise discriminated against, on the basis of the disability. See Nat'l Fed. of the Blind v. Lamone, 813 F.3d 494 (4th Cir. 2016); Seremeth v. Bd. Of Cnty. Com'rs Fredrick Cnty., 673 F.3d 333, 336 n.1 (4th Cir. 2012) ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'") (quoting Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 n.9 (4th Cir. 1995)).

The Plaintiff appears to allege that the Defendants denied his requests for reasonable accommodations and, more generally, that the Defendants provided inadequate medical care and accommodations for his hip and back pain. Assuming that the Plaintiff's conditions qualify as a disability, the Plaintiff's allegations fail to state an ADA or Rehabilitation Act claim because he "fails to show he was treated in this manner *because of* his disability."

7

Miller v. Hinton, 288 F. App'x 901, 903 (4th Cir. 2008) (affirming summary judgment for prison officials on prisoner's ADA claim that the institution denied him access to colostomy bags and catheters because he failed to show that he was treated in this manner because of his disability) (emphasis added). The ADA and the Rehabilitation Act are not violated "by a prison's simply failing to attend to the medical needs of its disabled prisoners…." Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (discussing ADA). Therefore, Plaintiff's ADA and Rehabilitation Act claims are dismissed for failure to state a claim upon which relief can be granted.

**B.     § 1983 Claims**

The Plaintiff also asserts claims under 42 U.S.C. § 1983 for deliberate indifference to his medical needs. To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

**1.     § 1983 Claims against Medical Personnel**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" and protects prisoner from the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg

v. Georgia, 428 U.S. 153, 173 (1976)).  To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs.  Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).  A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko, 535 F.3d at 241 (internal quotation marks omitted).  To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled on other grounds by Farmer, 511 U.S. at 825.  Allegations of inadvertent failure to provide adequate medical care or of negligent diagnosis fail to establish the requisite state of mind.  Wilson v. Seiter, 501 U.S. 294, 297 (1991).  Further, "mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances."  Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Wright v. Collins, 766 F.2d 841 (4th Cir. 1985)).

Here, the Plaintiff asserts that Nurse Melton, Nurse Barrier, and Nurse Campbell unreasonably withheld medical treatment and accommodations and deliberately ignored his complaints of pain and requests for prescribed pain medication and other treatment. The Plaintiff has plausibly stated deliberate indifference claims against these Defendants, and such claims will be permitted to proceed.

As for the psychiatrist Dr. Slater (sometimes referred to as "Slager" in the Complaint), the Plaintiff's deliberate indifference allegations appear to rest entirely on his claim that Dr. Slater told him that she was unable to treat his medical concerns and that she noted that it appeared he was receiving medical treatment. Such allegations are insufficient to support a deliberate indifference claim, and thus the Plaintiff's claim against Dr. Slater will be dismissed.

The Plaintiff appears to allege that PA Patane was deliberately indifferent for concluding that the Plaintiff's pain was psychological, discontinuing his medical accommodations upon the Plaintiff's arrival at MVCI, recommending that the Plaintiff see the psychiatrist, and ultimately recommending that the Plaintiff be approved for pain medication. Even assuming that Plaintiff's reported pain qualifies as a serious medical need, the Plaintiff has failed to state a deliberate indifference claim against PA

Patane. He does not explain how Patane's initial finding that his pain was psychological was anything more than a misdiagnosis. The Plaintiff does not even allege that such action rose to the level of negligence. Further, he has failed to demonstrate that Patane had a deliberately indifferent state of mind. Patane did not refuse care altogether in that he recommended that Plaintiff seek psychological treatment and ultimately requested that Plaintiff be approved for pain medication. In short, the Plaintiff's disagreements with Patane's diagnosis and treatment recommendations fail to state a deliberate indifference claim. Accordingly, the Plaintiff's § 1983 claim against PA Patane will be dismissed.

## 2. § 1983 Claims against Non-Medical Personnel

To establish a deliberate indifference claim against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to prison physicians' misconduct. Militer, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deem necessary and appropriate for the prisoner. Id.

Here, the Plaintiff asserts claims of deliberate indifference against several Department of Prison Services employees in Raleigh, including Defendants Lassiter, Catlett, and Jordan. The Plaintiff's allegations at most indicate that these Defendants were aware of the Plaintiff's complaints about his medical treatment and his requests for a transfer; however, the Complaint fails to adequately allege that any of these Defendants tacitly authorized or were deliberately indifferent to a pattern of inadequate medical care and accommodations at Mountain View CI. Accordingly, the Plaintiff's § 1983 claims against Defendants Lassiter, Catlett, and Jordan will be dismissed.

With respect to Superintendent Slagle, the Plaintiff has plausibly alleged that Slagle tacitly authorized or was deliberately indifferent to a pattern of inadequate medical care and accommodations at Mountain View. Accordingly, the Plaintiff's § 1983 claim against Superintendent Slagle will be allowed to proceed.

The Plaintiff, however, has failed to plausibly allege that any of the other non-medical personnel at Mountain View failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to prison physicians' misconduct. To the extent that these Defendants denied the Plaintiff any of his requested accommodations, they were entitled to rely on the instructions

12

of medical personnel who advised (rightly or wrongly) that the Plaintiff was not authorized to receive such items. Further, the Plaintiff's lengthy allegations demonstrate that time and time again, these Defendants responded to the Plaintiff's complaints and relayed his requests to the appropriate medical personnel. These allegations simply fail to state a plausible claim of tacit authorization or indifference to any alleged misconduct by medical personnel. Accordingly, the Plaintiff's deliberate indifference claims against Defendants Gibbs, Phillips, Grindstaff, Mask, Shepard, and McKinney are dismissed.

**IV. CONCLUSION**

For the foregoing reasons, the Court concludes that the Complaint has passed initial review on Plaintiff's § 1983 claims against Defendants Slagle, Melton, Barrier, and Campbell. The Plaintiff's remaining claims are dismissed without prejudice.

This Court's Local Rule 4.3 sets forth the procedure to waive service of process for current or former employees of NCDPS in actions filed by North Carolina State prisoners. In light of the Court's determination that this case passes initial review, the Court will order the Clerk of Court to commence the procedure for waiver of service as set forth in Local Civil Rule

4.3 for Defendants Slagle, Melton, Barrier, and Campbell, who are alleged to be current or former employees of NCDPS.

**IT IS, THEREFORE, ORDERED** that the Complaint [Doc. 2] has passed initial review with respect to the Plaintiff's § 1983 claims against Defendants Slagle, Melton, Barrier, and Campbell. The Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**.

The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Slagle, Melton, Barrier, and Campbell, who are alleged to be current or former employees of NCDPS.

**IT IS FURTHER ORDERED** that the Clerk shall mail the Plaintiff an Opt-In/ Opt-Out form pursuant to the Standing Order in Misc. Case No. 3:19-mc-00060-FDW.

**IT IS SO ORDERED.**

Signed: June 7, 2021

Martin Reidinger
Chief United States District Judge